How are you? Very well, thank you. Give my colleagues just a moment. May it please the court, I'm Matthew Hoppeck on behalf of Carlos Caballero-Martinez. This is a consolidated set of immigration appeals, both involving a removal order, a motion to remand, and an application for a U visa. The primary question before the court is whether the board must follow its own precedents that outline what it's supposed to do when an immigrant is eligible for a U visa. U visas are sort of peculiar because immigration judges don't have authority to grant them. So the issue often comes up in immigration court when a person is challenged with removability, but they're also eligible for this visa that would let them stay, which is only within the auspices of a sister agency. And the board has come up with a standard for how it can figure out whether to let a person stay waiting on that U visa. That decision is announced in matter of Sanchez-Sosa. In this case, Mr. Caballero-Martinez filed a motion with the board saying, I'm eligible for a U visa. Here's a copy of the U visa I've submitted. Please let me stay. And the verb, whatever it is he's asking for, isn't really relevant. Sanchez-Sosa was about a continuance because it was at the immigration court. In his motion, Mr. Caballero said, I would like for you to remand this case to the immigration judge. So they can continue the case, or if you'd rather, you can administratively close. Argue those two in the alternative. And the board's decision in Sanchez-Sosa lists a series of non-discretionary factors that the board has to apply, including starting with a presumption in favor of a continuance if the person can show that they're prima facie eligible for a U visa. Then the immigration judge is allowed to consider, for example, the prosecutor's position, if they've been reasonable, among other things. In deciding this case, in deciding the first motion, rather than address the factors laid out in Sanchez-Sosa, the board here said, we don't have jurisdiction over U visas. You can seek a U visa from outside the United States. So we deny your motion. And in a footnote, the board said, by the way, you haven't given us a filing receipt. We took an appeal to this court. We also filed a motion with the board asking that it reconsider and reopen. In our motion to reopen, we gave them a copy of the filing receipt. I hadn't had it before, because it takes about two months to receive one from the agency. And said, okay, well, here's the filing receipt. And the board denied that motion as well. As I understand the board's second decision, the filing receipt wasn't all that important. In fact, there's a footnote that said, I'm sorry, it's not a footnote. It's toward the bottom of the decision. The board said, that filing receipt doesn't really make a difference in terms of our decision. How did you interpret that footnote in terms of what the court said, or the board? About the filing receipt? I don't exactly know. So I start from Sanchez-Sosa. And in that decision, the person didn't have a filing receipt. At page 816 of that decision, the board said, he's still waiting on his filing receipt. And as I understood the footnote in the first decision, I interpreted it to mean, we're denying your motion in part because you didn't give us a receipt. Which is why I filed a second motion. I said, okay, well, I didn't have one, but here is the receipt. I interpreted the second decision to mean that that footnote was sort of a throwaway. I interpreted them to say, it doesn't affect the outcome of our decision because the receipt wasn't really the thing we took issue with. How does Sanchez-Sosa prevent ICE from carrying out a deportation? Technically, it doesn't. Sanchez-Sosa gives guidance to immigration judges on whether to order or delay removal. Because technically, once there's a removal order, even if the person has a pending visa... But if they choose to deny that request, what is the authority to reverse? If the immigration judge follows the decision in Sanchez-Sosa, if they apply all the factors and say, look, I decide to not exercise discretion, I don't think there's anything we could do in this court. My argument is a step before that. We're saying the board didn't apply the factors set out in Sanchez-Sosa. If it had, I would have a much harder time before this court because the board has set up a reasonable standard. The Supreme Court has said in Chevron that the court is supposed to defer to the agency's published decisions. And so if the agency followed its decision and was reasonable, I think, Chief Judge, that would probably be the end of the day. The problem here is the Sanchez-Sosa standard is pretty easy to follow. It has a list of factors. It says the adjudicator has to list those factors and talk about why you did or didn't meet them. And instead, the board here didn't talk about any of those factors. For one, it didn't talk about whether he was prima facie eligible for a U visa. And two, it didn't talk about, OK, if you're eligible, what are the other reasons we might not grant your visa? Does it matter that the litigant in Sanchez-Sosa sought a continuance while still in front of the IJ versus a remand, which is what is relevant here? I don't think it makes a difference. At least the board in Sanchez-Sosa didn't say so. I've wondered, perhaps the board didn't think Sanchez-Sosa applied here because we were in a different posture. But the board specifically cited that decision in denying our motion. Sanchez-Sosa announces a standard for continuances before an immigration judge. But the board went out of its way to cite that case here in denying our motion. I interpreted that to mean the board thinks it applies here. And this is getting back to what I said earlier. I don't think the verb necessarily matters. If you look at our motion, we had asked for a continuance as well. We said, look, the board doesn't have jurisdiction to grant continuances, but you could remand for an immigration judge to grant a continuance, or you could administratively close. I would note that the board in Sanchez-Sosa did the same thing. They remanded for the immigration judge to consider these factors. There's a similar case I wanted to point to that's talked about in our briefing. There's a decision of this court called Clifton v. Holder, which aligns pretty closely to what happened here. In Clifton, the applicant had filed a motion to remand with the board, saying, I want you to send this back to the immigration judge to consider my adjustment of status.  Instead, they said, we're declining to grant your motion because we can't grant an adjustment of status. And this court said, that's not reasonable, because that's not what he asked for. He didn't ask you to grant him an adjustment of status. He asked for a remand. Here, our motion asked for a remand so that the judge could apply the Sanchez-Sosa factors and decide whether a continuance was reasonable or necessary. Instead, the board specifically said in this decision, we don't have jurisdiction over U visas. That's baffling to me, in part because Sanchez-Sosa addresses that issue, and second, because this court had already announced in Clifton that the board can't get out of a motion by saying, we don't have jurisdiction to grant the underlying relief, because the motion isn't asking the board to grant the underlying relief. It's asking for a remand. Simple as that. So, given the ruling in Clifton, I think the easiest solution in this case would be to send the case back to the board and say, apply your standard. It's precedent. It binds you. Apply your standard and decide whether adjudication of the U visa merits continuance. The outcome, and getting back to the Chief Judge's question, what would prevent ICE from removing him, if he has a removal order, he could be deported, and in theory, he could seek his U visa from outside the United States, but by physically crossing the border outside the United States, all kinds of additional logistical problems come up, more grounds of inadmissibility come up, and so it's not just a matter of sort of convenience or preference. It's much harder to win a U visa from outside the United States, which I think is in large part why the board has created the standard at all, to allow people to stay in the United States when they're prima facie eligible. Another thing I think the board missed, that's talked about in Sanchez-Sosa, is the law enforcement certification. To get a U visa, you have to have a police department or sheriff's department sign a certification that says you are eligible. You were the victim of a crime. You cooperated. And the board in Sanchez-Sosa talked about how the existence of that law enforcement certification is a pretty significant factor, because it shows that someone has already exercised discretion in your favor, but here the board didn't mention the law enforcement certification. It's not clear whether the board missed it or just decided not to talk about it, but it is one of the factors that Sanchez-Sosa says should be considered. So there's no dispute that when you first sought the relief, you didn't supply the proof of filing? Is that the state of facts? We supplied the cover letter that had the date of filing. It was October 13, 2016. There's no dispute that we didn't have the receipt yet. In fact, that's in the record at page 18. And the receipt is the proof of filing? Right. The receipt came two months later. The logistical problem, and the reason we didn't, is motions to reopen have a 90-day deadline. So if I had waited for the agency to send me a receipt, my motion would be late, and my colleague on the other side would be here arguing that you have to deny it because the motion was filed late. So it's sort of a quandary. Do you file your motion before the deadline and give them proof that you're eligible, or do you wait on the receipt? I go back to the text of Sanchez-Sosa. Sanchez-Sosa does not say you need a filing receipt. It says you need proof of eligibility. And, in fact, in Sanchez-Sosa, close toward the end on page 816, the board there said he didn't have a filing receipt. All he had was proof that he was eligible. And there the board said it was enough to remand this case back to the immigration judge. I don't think the filing receipt was necessary. And getting back to Judge Gras's question, I think that footnote was probably a throwaway, and they clarified it in their second decision, saying, okay, you've given us the receipt, but that doesn't really make a difference. We would ask the court to not step on the agency's toes, of course, but to ask the agency to apply its precedents. If it wants to change the law, if it wants to change its standard, it has to do so in a way that gives people notice and publish a decision or issue a regulation or something that talks about the standard and how you would adjudicate remands for U visas. Otherwise, we have- It's a lot of a better term than keep the government honest. That's right. Follow your own decisions or change them, and then the courts can decide whether you've been reasonable or not under the standard that we've all known for years under administrative law. There's an additional issue about the substitute immigration judge. I'd like to reserve the rest of my time for rebuttal if I may. Thank you. Ms. Strapoli. Good morning, and may it please the court. Brianna Strapoli for the Attorney General. I'd like to start by clarifying, I think, the big point or big distinction that we have, and that's the application of matter of Sanchez-Sosa to this case. And very simply put, it's inapplicable. As Your Honor pointed out, that case dealt with when you have ongoing proceedings before an immigration judge where you're asking for a continuance. That's not the procedural posture here. The act of violence against petitioner didn't even occur until after his immigration proceedings with the immigration judge were completed, and it was already on appeal. So what we have- Which case are you discussing? What's that? Which case are you discussing? So a matter of Sanchez-Sosa deals with continuances before an immigration judge. I see you didn't even cite it in your brief, but did you address the issue you're addressing now in your brief? That Sanchez-Sosa is inapplicable? Yes, Your Honor. And I think that it's just a clear distinction about when the continuance- We're just in a different posture, and that's fine. The immigration judge and the board have different tools to deal with this. So whether it's- Petitioner's counsel raises the point of did the board apply its proper precedent? Yes, it did. The proper precedent is administrative closure, and that at that time was administrative closure, which is a matter of abetezian. Counsel, didn't the board purport to rely on Sanchez-Sosa in its order? So the board, I think, and what Petitioner's counsel was citing to, is it cited in a parenthetical both Sanchez-Sosa and matter of abetezian, and then in a parenthetical after matter of abetezian, explain that it's a non-exhaustive list of factors. And so what was really, I think, the board was getting at here is that the tool- And Petitioner concedes this. They do not have- The board does not have the ability to continue proceedings. Continuances are only for immigration judges. And there's good reason for this distinction, which is that why would we remand to reopen proceedings that have already been completed when they achieve the same purpose, which is to take it off the active docket? And so just depending on where you are procedurally, there are different ways to get there. The tool before the immigration judge, you have continuance or admin closure. And then before the board at this time, you only had admin closure. And so that's really the crux of this case. And so Sanchez-Sosa is merely inapplicable. What the board did, however, was address matter of abetezian to say that in this case, it's not warranted. Now, I'd like to note that Petitioner waived this, and he challenged matter abetezian. So in his opening brief, by failing to challenge it, he only mentions it once in a footnote. So- What's the effect of the Castro-Tum decision that seems to say there's no administrative closure prospectively? That's correct. So if this court were to remand for administrative closure, that is no longer available because the attorney general in matter of Castro-Tum overruled matter abetezian to only apply basically saying when there's a regulatory right or some sort of settlement agreement where administrative closure was provided. So, for example, if this was a T visa case, that's in the regulations that they can admin close. But it's not for U visas. So the effective outcome, Your Honor, would be that this just wouldn't be available. It would be moot as far as admin closure is concerned. But I want to bring up one other point, too, which is just as a practical matter. Petitioner is not without remedy. As the board stated as one of its reasons for denying administrative closure, is Petitioner at any point in time can seek a stay from DHS. He's not done so. So that is another, again, it's all different ways to- We have a case where Petitioner has conceded he's removable. He's ineligible for cancellation of removal. And what he really is seeking is to stay within the country while his U visa is pending. And this brings up some problems because, you know, we've got a long lag time on U visas, which Petitioner noted on AR 85 and 86. USCIS for U visas have been, since 2009, increasing exponentially. So in 2009 there was about 11,000 pending U visa applications. There's an annual 10,000 cap. In 2016 that was close to 86,000. And on 2017 that was tracking for 35,000 more. So as he noted in his appeal to the board, there's about a two to three-year waiting period to just get on the wait list for a U visa. Then once you're on the wait list, you still have to wait even further to get to actually getting the U visa granted, and that's assuming that you're eligible. How long might that take? Your Honor, it's all speculation because it all depends on the I-918. And in the meantime, where is this person physically located? I believe he's still within the United States, Your Honor. In other words, is there any guarantee that he'll be there while this long process runs its course? In the United States, Your Honor? Right. So, again, this is why Petitioner is seeking to have this administratively closed so that there's not a final order of removal entered. Again, there's also other remedies, which is he could seek a stay. So they're meant to track simultaneously. In other words, there's no real likelihood that he'll be escorted out of the country in the near future? Well, I guess one would depend if there's a final order of removal, which will depend much on this court's outcome today. But also Petitioner, again, has that separate remedy, which he's not availed himself to yet, which is to ask DHS for a stay of removal, which the board noted in its decision is a possibility. And as best as I can tell, and perhaps my opposing counsel can clarify, that has not been done. And so that's an option. Speaking of this workload, I'm sure all of you, well, everybody read that article by Assistant Attorney General Rosenstein the other day in the Wall Street Journal about needing a whole new system of additional judges, which I guess has nothing to do with this case. Correct, Your Honor. Because USCIS is the one that's designated to adjudicate and has sole authority to adjudicate the U visas. But what I can tell you, obviously this is not in the record, but to answer your question, USCIS- Well, I shouldn't ask extra record questions. I guess we've read what we've read, and we can live with our own thoughts about it. But USCIS is trying to address the backlog by hiring more people, and they've also employed two separate service centers to try and adjudicate to get people on the wait list quicker, just to address your concerns about that. But, again, this is, you know, one of those cases where the board did evaluate these factors. And they are relevant to Avitesian, because Avitesian said administrative closure would not be appropriate even if an event or action is certain to occur, but not within a period of time that is reasonable under the circumstances. And so the long wait time on this- And again, what did you say earlier about Avitesian? What precedential effect does it have? So, for the purposes of this case, the board applied the correct law of the time, which is a matter of Avitesian. However, that has subsequently been overruled. And that was overruled by which particular- Matter of Castro-Toome, which is an attorney general decision, which was issued this year in 2018. In addition, on Avitesian, just to go through again, the administrative closure would not be appropriate. They said, quote, if the request is based on an event or action that may or may not affect the course of the alien's immigration proceedings. So, in this case, the filing of the U visa, as per the regulations, has no effect on ISIS authority to execute the final order of removal. Again, per the regulations, an alien who is subject to a final order of removal is not precluded from filing a petition. He can pursue this from inside the United States or outside the United States. And his remedy could be to seek a stay under 241.6a, and he has not done so. If there's no further questions, I will start addressing just the due process claim. So, petitioner in this case alleges that there was a due process error by having a different immigration judge issue a decision once the previous immigration judge retired. Again, a due process claim requires two components, a procedural error and prejudice. Petitioner can demonstrate neither. It's very clear from the record that the exact regulatory provision on point was complied with. The immigration judge became unavailable because of retirement. And then a second immigration judge came in, reviewed the drafted decision, and agreed with everything that the previous judge had dictated. Petitioner never complains about the content of the underlying hearing. There was no allegations of any sort of defect in the underlying proceedings. There's no allegations that the second IJA was biased or anything improper there. And if anything, petitioner actually had more process because now he's had two immigration judges reviewing his case, both of which the second immigration judge did not have to rubber stamp the first one. The second immigration judge could go a different way if after reviewing the record of proceedings he or she felt differently. So in anything, petitioner has had more process rather than less. And again, other sister circuits who have reviewed this have even said when they don't comply by saying those magic words, which is per the regulations, they have to familiarize themselves with the record of proceedings and state so on the record, that if it's clear from the decision, that's good enough. And in this case, we don't even have that. We have the explicit dictation from the immigration judge that he reviewed the entire proceedings and that he also adopted and affirmed the previous judgment. There's no further questions from the court. Briefly conclude. I see none. I'm sorry. For the aforementioned reasons, this court should deny the petitions for review. Thank you, counsel. Counsel, why would Abitizian not be the applicable president rather than Sanchez? Because it doesn't exist anymore. The attorney general has now said administrative closure isn't a thing. But if you get back to our ask, if you look at the motion, it's quite plain. We weren't asking for administrative closure. The first thing we asked for was for a remand and a continuance. And then in the following paragraph, we said, in the alternative, you could administratively close. The board, at page 29 of the record, only addressed that second part. It only addressed administrative closure. And we would concede that since we've finished briefing here, the attorney general has said administrative closure doesn't even exist anymore. So this is not an administrative closure case. The court doesn't have to apply the Abitizian factors. The second answer to your question is because the board said so in its decision at page 29. It cited matter of Sanchez-Sosa. It would not have done so if the decision was inapplicable. The Department of Justice is bound to the board's reasoning. If it doesn't like the board's reasoning, it can accept a remand and the board can do over. But it doesn't get to change the rationale for the agency's decision when we get up on appeal. So that's the answer. Matter of Sanchez-Sosa applies. And Abitizian might have applied, but it apparently doesn't exist anymore. And my motion is at page 37 of the record, to be clear. The specific thing we asked for, and I quote, Mr. Caballero is eligible for a U visa and has the application pending. However, because the board doesn't have authority to grant a motion to continue, we respectfully move the board to remand this matter to the immigration judge. That was our ask. And then the following paragraph was about administrative closure. The second point I wanted to talk about was this administrative lag time, why it's taking so many years to process U visas. I think at footnote four of my colleague's brief, they indicated that the agency is currently processing U visas that were filed in October 2014. The point I would make is that this bureaucratic morass, it wasn't created by my client, and it's not his fault. The board has done what it can to solve it by creating a standard in Matter of Sanchez-Sosa. The board has acknowledged U visas are taking a long time, which is why it's given the immigration judges the tools to say, in some cases, we're not going to grant a continuance when you're not likely to be granted one, or when you're just a bad person, and so even if you got granted one, I don't want you to stay anyway. The judge has those tools, standard in Matter of Sanchez-Sosa, and the decision says use your tools. The final point, and just to wrap it up, the Department of Justice made some due process arguments. My brief doesn't raise a due process argument. We haven't challenged that he received due process. The argument he made about the substitute immigration judge was that the only thing the board addressed was due process, and in his briefing to the board, he had raised statutory, regulatory, and precedential arguments for why substituting the immigration judge wasn't permitted, and if it is permitted, there's a way to go about doing it, and so when the board says, we think you've been given due process, our argument to this court in my briefing. Well, what's your best authority that the board, that if you have a judge retire or get sick or die, all of the different reasons that there might be a non-continuance of the same decider, that having a substitute judge review the record, make a decision based on the record in existence, giving due regard to what's been already done, is not an appropriate thing for the BIA? Well, what you've just said is exactly right. That's what they're supposed to do. The regulations say when the judge becomes unavailable, they can substitute an immigration judge, but that same regulation says they must familiarize themselves with the record. It's just not clear that that's what happened here because the first judge dictated her decision. She recorded it, and then the second judge signed it, and it doesn't say he familiarized himself with the record. It doesn't say he went back and listened to the testimony. My colleague mentioned rubber stamps. That's the essence of a rubber stamp. Did the second judge indicate in any way, shape, or form that he or she, I can't remember, reviewed the record at all? There's a footnote in the second decision that said he agrees with the decision. I don't believe it says he reviewed the testimony, which was our main complaint. Okay. Thank you. Thank you, Mr. Hopler. The court wishes to thank both counsel for the argument you provided to the court this morning, and the briefing which you've submitted will take your case under advisement. You may be excused.